UNITED STATES of America,
Plaintiff–Appellee,

v.

Giora ESHKOL, Defendant–Appellant.

No. 95–50308.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1996.

Decided March 5, 1997.

Guy C. Iverson, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Patrick R. Fitzgerald, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: JEROME FARRIS, ROBERT R. BEEZER and A. WALLACE TASHIMA, Circuit Judges.

BEEZER, Circuit Judge:

Giora Eshkol appeals his conviction and sentence for counterfeiting U.S. currency in violation of 18 U.S.C. §§ 371 and 474. Eshkol argues that the district court erred by: (1) denying his motion to dismiss the government's superseding indictment; (2) refusing his proposed jury instructions; (3) denying his motion to recuse; and (4) enhancing his base offense level by nine points, pursuant to U.S.S.G § 2B5.1(b)(1). We have jurisdiction under 28 U.S.C. § 1291. We affirm the conviction, vacate the sentence and remand for the imposition of the alternative sentence.

I

Secret Service agents arrested Eshkol and his coconspirator, Shmuel Saidon, after the agents received a tip from the owner of a computer-printing store that Eshkol and Sai-

don were making precise photonegatives of U.S. currency. Agents witnessed the suspects, under surveillance, making a photonegative of the back side of a twenty dollar bill. By the time of arrest, Eshkol had successfully printed out counterfeit images of the front side of a twenty dollar bill as well as subsidiary parts of a bill. Eshkol's computer also contained these counterfeit images.

The agents later searched a warehouse from which Eshkol and Saidon conducted business and discovered high-grade ivory paper, a color printing press, magnetic ink used in printing currency and a partially-completed, black and white counterfeit twenty-dollar bill hidden behind a toilet. During an ensuing interrogation, Eshkol claimed that his goal was to create an exact copy of a twenty dollar bill for advertising purposes.

A grand jury indicted Eshkol on one count of conspiracy to counterfeit, in violation of 18 U.S.C. § 371, and one count of possession of "things" (photographic negative images) from which counterfeit obligations can be made, in violation of 18 U.S.C. § 474 ¶ 4. Eshkol moved to dismiss for pre-indictment delay. At the hearing, Eshkol's attorney argued that Eshkol was unfairly prejudiced by the delay because he could no longer locate a key witness. Without requesting an in camera proffer, Eshkol's attorney told the court that the missing witness would have testified that Eshkol planned to use the counterfeit images in an advertising poster. The government noted that it had not anticipated an "advertising" theory of defense. Based on this information, the government brought a superseding indictment which charged the same counts as the original indictment, but added count 3 for creating the likeness of United States currency in violation of 18 U.S.C. § 474 ¶ 6.

Eshkol proceeded to trial. The jury returned a guilty verdict on all three counts. The district court sentenced Eshkol to concurrent thirty-three month sentences for each count, along with a three-year term of supervised release. The district court also imposed an alternative sentence of 24 months if the 33 month sentence was reversed on appeal. This timely appeal followed.

## II

We first consider whether the district court erred in refusing to dismiss the superseding indictment.

### A

■ Eshkol asserts that the superseding indictment violated his due process right, independent of the Fifth Amendment protection against double jeopardy, to be free from successive prosecutions. We review de novo the district court's denial of Eshkol's motion to dismiss on due process grounds. *See United States v. Barrera–Moreno,* 951 F.2d 1089, 1091 (9th Cir.1991).

■ Eshkol contends that allowing the government to bring a superseding indictment after learning of Eshkol's defense theory is analogous to permitting a successive prosecution on a different offense for the same underlying conduct. This analogy is not persuasive. In *Sanchez v. United States,* we stated that in some circumstances successive prosecutions *may* violate due process even if they are not barred by the Double Jeopardy Clause: "planned exposure of an accused to a succession of trials for offenses clearly subject to joinder for the deliberate purpose of enhancing the chance of conviction on weak evidence may well constitute fundamental unfairness." 341 F.2d 225, 229 (9th Cir.1965). No precedent suggests that the bringing of a superseding indictment could be so fundamentally unfair as to violate due process. We will not extend the tentative language in *Sanchez* to include superseding indictments. The superseding indictment did not violate Eshkol's due process right to be free from successive prosecutions.

### B

■ Eshkol also contends the superseding indictment should have been dismissed because it resulted from a forced sacrifice of his Fifth Amendment privilege against self-incrimination. Eshkol relies on *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), for the proposition that a defendant cannot be compelled to relinquish one constitutional right in order to

protect another. In *Simmons,* the Supreme Court held that a defendant should not be made to forfeit his Fifth Amendment privilege against self-incrimination in order to protect his Fourth Amendment rights. *Id.* at 393–94, 88 S.Ct. at 976. Specifically, the Court precluded the government from using the defendant's suppression hearing testimony to prove guilt at trial. *Id.*

Eshkol argues that his attorney had to provide information regarding Eshkol's theory of defense during the hearing on the motion to dismiss in order to protect Eshkol's right against pre-indictment delay. This, Eshkol asserts, constituted a forced forfeit of his privilege against self-incrimination. He argues that the superseding indictment was a direct result of the information gained from his forced sacrifice of the privilege against self-incrimination and, as such, should be dismissed.

Eshkol's argument is meritless. Eshkol is asking that the statements of his attorney be treated like the sworn testimony of the defendant himself. Since it was Eshkol's attorney who made the statement, and not Eshkol, Eshkol's Fifth Amendment privilege against compelled self-incrimination is simply not implicated. Eshkol's attorney's failure to request an in camera proffer, which could have prevented the government from learning the defense theory, supports our conclusion.

The district court was correct when it refused to dismiss the superseding indictment.

### III

We next decide if the district court correctly denied Eshkol's proposed jury instructions. The district court refused both Eshkol's 18 U.S.C. § 475 lesser included offense instruction and his 18 U.S.C. § 504 safe harbor instruction.

### A

██ Eshkol contends that 18 U.S.C. § 475 is a lesser included offense of 18 U.S.C. § 474 ¶ 6. This is an issue of first impression in this and other circuits. We review de novo a denial of a defendant's jury instruction based on a question of law. *Unit-ed States v. Duran,* 59 F.3d 938, 941 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995). Whether an offense is a lesser included offense is a question of law.

Section 474 ¶ 6 reads in relevant part:

> Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof ... [i]s guilty of a class C felony.

Section 475 states:

> Whoever designs, engraves, prints, makes, or executes, or utters, issues, distributes, circulates, or uses any business or professional card, notice, placard, circular, handbill, or advertisement in the likeness or similitude of any obligation or security of the United States issued under or authorized by any act of Congress or writes, prints, or otherwise impresses upon or attaches to, any such instrument, obligation, or security, or any coin of the United States, any business or professional card, notice, or advertisement, or any notice or advertisement whatever, shall be fined under this title.

Eshkol's proposed jury instruction stated that if the jury found that:

> ... Eshkol intended to use the likeness of the Federal Reserve note in any business or professional card, notice, circular, handbill, or advertisement, you must find him not guilty of violating 18 U.S.C. § 474(6) in count three of the superseding indictment and instead find him guilty of violating 18 U.S.C. § 475.

██ A defendant is entitled to a lesser included offense instruction if the elements of the offense on which the instruction is sought "are a subset of the charged offense and a factual basis supports the instruction." *United States v. Rivera,* 43 F.3d 1291, 1297 (9th Cir.1995) (quoting *United States v. Sneezer,* 983 F.2d 920, 923 (9th Cir.1992) (internal quotation omitted)). The particular factual background is irrelevant in determining whether the purported lesser offense is a subset of the greater offense: "Rather, the elements of each crime must be compared

using the text of the statutes involved without regard to the inferences that may be drawn from evidence introduced at trial." *Id.*

Section 475 contains an element not found in § 474 ¶ 6. Specifically, § 475 requires proof of the existence of an "advertisement" or other similar item. Section 474 ¶ 6 does not require such a showing.

At trial, Eshkol argued that § 475 applies to a defendant who has not yet created an advertisement, but who intends to do so. Therefore, Eshkol asserted, § 475 does not contain an "advertisement in existence" element. As the district court correctly noted, however, reading § 475 without a requirement that the "advertisement" be "in existence" eviscerates § 474 ¶ 6. If we read § 475 as not requiring an "advertisement in existence" every counterfeiter whose actions would otherwise violate § 474 ¶ 6 will claim that they intended to produce an advertisement and are thus entitled to the lesser included offense instruction under § 475.

The district court properly refused to give defendant's § 475 instruction as this section is not a lesser included offense of § 474 ¶ 6.

## B

■■■ Eshkol also maintains that the district court should have instructed the jury as to the safe harbor provisions of 18 U.S.C. § 504. We review for abuse of discretion a district court's denial of a defendant's jury instruction if the parties dispute whether the required factual foundation exists. *United States v. Duran*, 59 F.3d at 941.

Section 504 creates a safe harbor, provided that certain conditions are met, for a person who may otherwise violate § 474 ¶ 6. In relevant part, these conditions are:

(i) all illustrations shall be in black and white...

(ii) all illustrations shall be of a size less than three-fourths or more than one and

one-half ... of each part of any matter so illustrated ... and

(iii) the negatives and plates used in making the illustrations shall be destroyed after their final use in accordance with this section.

18 U.S.C. § 504(1)(D)(i)–(iii). Eshkol's proposed jury instruction stated that the jury must not find him guilty of violating section 474 ¶ 6 if it found that his intent conformed to the above conditions.

■■■ The district court refused to give Eshkol's proposed instruction because Eshkol did not provide sufficient evidence that he intended the illustrations of the U.S. currency to be in black and white as required by § 504(1)(D)(i).[1] A defendant is entitled to have the judge instruct the jury on his theory of defense if that theory has some foundation in the evidence. *United States v. Gomez–Osorio*, 957 F.2d 636, 642 (9th Cir.1992). Although this is a very low evidentiary standard, Eshkol failed to meet it. Eshkol testified that his intended advertisement might have been produced in either black and white or color. Section 504 mandates that the illustration "shall be in black and white." It follows that if the defendant has not yet created the illustration, he must intend for the illustration to be produced in black and white only if he wishes to qualify under the § 504 safe harbor. Eshkol's testimony was equivocal at best as to his intent to design a black and white illustration.

Further, Eshkol's evidence of his training in black and white lithography and the black and white poster copy of a Picasso which Eshkol produced do not support a finding that he intended to create a black and white illustration of U.S. currency. This evidence might lend credibility to Eshkol's ability to produce a black and white advertisement, but it does not relate to his intent. In light of Eshkol's testimony that he might have produced a color poster of the currency, the district court did not abuse its discretion in

---

1. The government asks us to hold that § 504 does not apply to cases where there is no final legal product. Such a holding would make the intent of the defendant irrelevant. In *United States v. Green*, however, we held that a district court did not abuse its discretion in reading an

intent element into § 504. 962 F.2d 938, 943 (9th Cir.1992). We do not reconsider the intent issue here because we uphold the district court's refusal to instruct on Eshkol's proposed § 504 jury instruction on lack of evidence grounds.

denying Eshkol's proposed § 504 jury instructions.

## IV

■■■ We now turn to Eshkol's argument that the district judge erred by failing to recuse himself at sentencing. A district court's denial of a motion for recusal is reviewed for an abuse of discretion. *United States v. Chischilly,* 30 F.3d 1144, 1149–50 (9th Cir.1994).

Eshkol sought recusal of the district judge under 28 U.S.C. § 455 which mandates that a judge shall recuse himself where his impartiality might reasonably be questioned or "[w]here he has a personal bias or prejudice concerning a party." An extrajudicial source is not required for recusal under § 455. The Supreme Court has held that "[a] favorable or unfavorable predisposition can also ... be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474 (1994).

In no manner did the district judge's actions or statements at trial indicate an "inability to render fair judgment." *Id.* A review of the record indicates no pervasive bias on the part of the district judge. The district judge did not single out defense counsel for criticism. The judge's comments concerning Eshkol's alienage occurred during a hearing on bail and addressed the judge's concern that Eshkol might flee the country. The judge did not abuse his discretion in denying Eshkol's motion to recuse.

## V

■■■ Finally, we address whether Eshkol's sentence reflects an improper enhancement under the Sentencing Guidelines. We review de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996).

United States Sentencing Guideline 2B5.1, "Offenses Involving Counterfeit Bearer Obligations of the United States," applies to counterfeiting of United States currency and coins. U.S.S.G. 2B5.1, Application Note 1. The base offense level under this guideline is level nine. U.S.S.G. 2B5.1(a). Enhancements of the base level are available under guideline 2B5.1(b).

The district court enhanced Eshkol's base level under U.S.S.G. 2B5.1(b)(1). That guideline provides: "If the face value of the counterfeit items exceeded $2,000, increase by the corresponding number of levels from the table at section 2F1.1 (Fraud and Deceit)." U.S.S.G. 2B5.1(b)(1). The district court held that, because Eshkol intended to produce $400,000 worth of counterfeit U.S. currency, a nine level enhancement was appropriate. *See* U.S.S.G. 2F1.1(b) (providing a nine level increase for losses from $350,000 to $500,000).

However, guideline 2B5.1(b)(1) only applies when the value of counterfeit items exceeds $2,000. The secret service merely recovered one partially complete counterfeit bill with a face value of twenty dollars.

While no precedent directly addresses this issue, the plain meaning of guideline 2B5.1(b)(1) dictates that only existing counterfeit bills can be counted towards the $2,000 requirement. This interpretation comports with case law from other circuits which have held that partially completed counterfeit bills can be used to meet the $2000 requirement. *See United States v. Lamere,* 980 F.2d 506, 512–13 (8th Cir.1992); *United States v. Turner,* 586 F.2d 395, 397–98 (5th Cir.1978). These cases reason that guideline 2B5.1(b)(1) does not require that items counted towards the $2,000 be complete, but it does require that the items be "fully counterfeit." The requirement that items be "fully counterfeit" necessarily entails a requirement that the counterfeit items exist. Because the counterfeit item recovered from Eshkol's business does not exceed $2,000, guideline 2B5.1(b)(1) does not apply. The district court erred in enhancing Eshkol's base level under this guideline.

The district court sentenced Eshkol to an alternative sentence of 24 months based on U.S.S.G. 2B5.1(b)(2) and a two level enhancement for perjury pursuant to U.S.S.G. 3C.1.

Guideline 2B5.1(b)(2) requires a base level of fifteen if the defendant possesses or has custody of a counterfeiting device. Eshkol does not appeal the alternative sentence. We vacate the original sentence and remand for imposition of the alternative sentence.

AFFIRMED in part, VACATED and REMANDED in part.